# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *et al.,*<br>*Ex rel.* TINA D. GROAT,<br><br>Plaintiffs<br><br><br>v.<br><br><br>BOSTON HEART DIAGNOSTICS<br>CORPORATION,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 15-487 (RBW) |

## MOTION OF
## AMERICAN CLINICAL LABORATORY ASSOCIATION ("ACLA")
## FOR LEAVE TO FILE AMICUS BRIEF

Pursuant to District Court Local Rule 7(o), the American Clinical Laboratory Association

("ACLA") files this motion requesting leave to file an Amicus Curiae brief in support of the

Motion for Reconsideration, filed by Defendant Boston Heart Diagnostics Corporation ("Boston

Heart"), in connection with the Court's Memorandum Order of June 9, 2017 ("Memorandum

Order").

Under Local Rule 7(o)(2), the movant requesting permission to file an Amicus Brief must

provide the following:

- The nature of the movant's interests;
- The parties supported and the position of each party on the motion;
- An explanation of why an amicus brief is desirable; why the movant's position is not adequately represented; and why the matters asserted are relevant to the disposition of the case.

## I.      Interest of ACLA.

The American Clinical Laboratory Association is a not-for-profit organization that represents the interests of clinical laboratories and the physicians and patients who rely on laboratory testing.

The mission of ACLA is to:

- Advocate for laws and regulations recognizing the essential role that laboratory services play in delivering cost-effective health care;
- Encourage the highest standards of quality, service and ethical conduct among its members; and
- Promote public awareness about the value of laboratory services in preventing illness, diagnosing disease, and monitoring medical treatment.[1]

ACLA actively works with Congress, the Centers for Medicare and Medicaid Services (CMS) and Medicare contractors to promote the development of policies that protect the Medicare Program and minimize the burdens on laboratories and test-ordering physicians. ACLA has 33 laboratory members, including local, regional and national laboratories, and members that perform both routine and esoteric testing. ACLA estimates that its members provide approximately 2 billion laboratory services annually, which is approximately 20 percent of the U.S. market for clinical laboratory testing. ACLA also has 13 associate members, which are not laboratories, but are other entities with an interest in matters affecting the laboratory industry. Every laboratory that is a member of ACLA provides services to Medicare beneficiaries and submits claims to the Medicare Program for those services. Thus, each member could be directly affected by the Court's ruling.

Boston Heart is not a member of ACLA; however, ACLA members are extremely concerned about language in the Court's Memorandum Order finding that a laboratory has an

---

[1]          www.acla.com/about-us/mission

obligation to certify that the tests for which it requests government reimbursement are medically necessary and that the laboratory's obligation is independent of the ordering physician's obligation to determine the medical necessity of the tests.  ACLA recognizes that it is unusual to file an Amicus Brief at this stage of a proceeding.  Nonetheless, the matter is of such significance to ACLA members, and all providers of laboratory services, that ACLA is asking the Court for leave to file the Amicus Brief, in order to explain the nature of its concerns more fully.[2]

## II.  <u>Position of the Parties on Movant's Request</u>

ACLA files this motion in support of Boston Heart's Motion for Reconsideration, filed on June 23, 2017.  ACLA has conferred with the parties regarding this motion.  Boston Heart has authorized ACLA to state that it has no objection to ACLA's filing of an Amicus Brief.  The Relator's counsel has informed ACLA that Relator objects to ACLA's request to file an Amicus brief, and that it will oppose ACLA's Motion.

## III.  <u>Reasons Supporting ACLA's Motion</u>

According to the Memorandum Order, Boston Heart "has an obligation to establish that the tests for which it seeks government reimbursement are medically necessary" before it bills for the tests.[3]  The Court also notes that the laboratory "had an independent obligation to certify that the tests for which it requested government reimbursement were medically necessary." [4]

Based on these statements, it appears the Court has concluded that laboratories must review the diagnosis codes and other information submitted by the test-ordering physician and, based on that information, assess the patient's medical condition to determine medical necessity

---

[2]      ACLA specific concern is with Section III.A.1.b.iii. of the <u>Memorandum Opinion,</u> entitled "Whether Boston Heart Must Determine Medical Necessity" at pp. 15-19.

[3]      <u>Memorandum Opinion</u> at 16.

[4]      <i>Id.</i> At 12. According to the Relator, "Labs have an affirmative obligation to examine the doctor's test ordering information and only perform and bill for the test if it is properly justified by the diagnosis."  <u>Relator's Opposition to Defendant's Motion to Dismiss Relator's Second Amended Complaint</u> at 12-13.

before billing for the testing.  If the laboratory determined that the tests ordered were not medically necessary, then presumably the laboratory would not perform the testing, since it is unlikely to perform testing for which it would not be paid. As discussed below, because of its position as representative of laboratories across the country that provide diverse types of testing, ACLA has a unique perspective that meets the standards for filing an Amicus Brief, set out in Local Rule 7(o)(2).

### A.  **ACLA's Participation is Desirable**.

ACLA represents the clinical laboratory industry.  Its members range from some of the largest laboratories in the world to some of the smallest.  Its members perform routine testing, as well as highly sophisticated genetic testing that predicts the nature of a patient's cancer, and what types of therapies may be most useful in treating it.  As the representative of the industry, ACLA can provide a unique perspective on how laboratories, including Boston Heart, perform testing, interact with ordering clinicians, and bill for their services.  Most importantly, it can explain the role that laboratories play in patient care, generally. This is important because whatever the Court decides concerning Boston Heart's responsibility for determining medical necessity of the testing that it performs could be applied to laboratories across the country.

ACLA has been involved in issues applicable to laboratories for several decades.  As a result, it is able to provide the Court with a historical perspective on the origin of various requirements that are being considered by the Court.  For example, ACLA participated in the Congressionally-mandated Negotiated Rulemaking Proceeding on laboratory issues in the late 1990s, which gave rise to many of the requirements that have been discussed in this proceeding. For example, the Negotiated Rulemaking focused on issues of medical necessity and documentation included with a claim.  In addition, that proceeding resulted in the group of

National Coverage Decisions that established the appropriate diagnosis codes for specific tests.[5]

That rulemaking is also the origin of 42 C.F.R. §410.32, which establishes laboratory

documentation and recordkeeping requirements, and which has been the subject of discussion by

the Court and the parties.[6]

**B.   The Parties Cannot Adequately Represent ACLA's Concerns**

According to a recent study from the HHS Office of Inspector General, over 600,000

different laboratories furnished over 474 million laboratory tests to Medicare beneficiaries

during 2015.  That amounts to almost 1.3 million tests per day on average.  These tests were

ordered by over 600,000 different medical professionals.[7]  In addition, ACLA itself represents a

broad section of the industry:  33 laboratories furnishing over 2 billion tests annually.

Despite the number of entities involved, all laboratories providing testing services follow

similar procedures.  They receive specimens of blood, urine, other bodily fluids, or tissue,

accompanied by orders from physicians for specific tests.  They perform those tests and report

the results back to the ordering physician, as quickly as possible, often within 24 hours.

Laboratories performing this testing almost never have examined the patient or have reviewed

the patient's medical record.

The Court's finding that laboratories, nevertheless, have an independent obligation to

determine the medical necessity of testing, if adopted by other courts, would have a significant

adverse impact on these laboratories.  While Boston Heart can explain the impact that such a

requirement would have on it, ACLA can provide a broader perspective on how such a

---

[5]     *See* Medicare Program: Negotiated Rulemaking: Coverage and Administrative Procedures for Clinical Diagnostic Laboratory Services; Final Rule, 66 Fed. Reg. 58788, 58846 (Nov. 23, 2001) ("Negotiated Rulemaking").

[6] 42 C.F.R. §410.32(d).

[7] Office of Inspector General, Medicare Payments for Lab Tests in 2015:  Year 2 of Baseline Data (OEI-09-16-00040) at 3.

requirement would affect other laboratories in the country that perform testing.  In particular,

ACLA can elucidate why all laboratories, not just Boston Heart, are not in a position to

determine the medical necessity of the testing performed and must rely on physicians to do so.

Most importantly, ACLA can provide further perspective on why it is impossible for laboratories

to simply not provide the testing ordered by physicians for their patients.  ACLA's role in this

instance would be to represent the laboratory industry and to explain in detail how the Court's

requirement could affect laboratory testing across the country.  While Boston Heart can discuss

the impact of the Court's decision on its own operations, ACLA can explain how the decision

will impact the industry as a whole.

ACLA can also help to elucidate the significant difficulties that such a requirement would

create for laboratories, which perform, as noted above, on average 1.3 billion tests a day for

Medicare patients; the delays the requirement would create in reporting test results to physicians

and other clinicians; and the likely impact on costs to the industry and the Medicare Program.

ACLA can provide a broad perspective on how such a requirement would affect patients beyond

those served by Boston Heart's specific testing services, such as those with cancer or other life-

threatening conditions.  Again, ACLA can provide greater context than can Boston Heart, which

has a perspective on how this requirement would affect only its own operations.

Finally, ACLA also can address, in more depth than can Boston Heart, the regulatory

framework that applies to clinical laboratories, not only at the federal level but also at the state

level.  In particular, ACLA can provide additional information about the crucial differences that

exist between the regulation of laboratory testing—which involves examination of specimens—

and the practice of medicine—which involves deciding which tests a patient needs and using the

results from those tests to diagnose and treat a patient.  Because ACLA represents laboratories nationally, it can provide additional perspective to the Court of this crucial issue.

   **C.** **The Medical Necessity Issue Is Central to the Disposition of the Case**.

      Finally, the Court's decision concerning the laboratory's role in determining medical necessity was a key factor in its determination not to dismiss the Relator's Complaint. Thus, it is clear that the issues raised will be directly relevant to the disposition of the case

### CONCLUSION

      For all of the above reasons, ACLA asks the Court to grant its Motion for Leave to File an Amicus Brief in this matter.

Respectfully submitted,

*/s/ Kelley C. Barnaby*

Kelley C. Barnaby, Esq. (D.C. Bar No. 998757)
kelley.barnaby@alston.com
Peter M. Kazon, Esq. (D.C. Bar No. 271817)
peter.kazon@alston.com
Alston and Bird, LLP
950 F Street, NW
Washington, DC 20004
(202) 756-3300
(202) 654-4834(f)

*Counsel for non-party American Clinical
Laboratory Association*

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on June 30, 2017, this document, filed through the ECF System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

_/s/ Kelley C. Barnaby_____
Kelley C. Barnaby

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*, )<br>*Ex rel.* TINA D. GROAT, )<br> )<br> Plaintiffs )<br> )<br> )<br> v. )<br> )<br> )<br>BOSTON HEART DIAGNOSTICS )<br>CORPORATION, )<br> )<br> Defendant. )<br> )<br> ) | Civil Action No. 15-487 (RBW) |

**[PROPOSED] ORDER**

The Motion of the American Clinical Laboratory Association for leave to file an Amicus Curiae brief is hereby GRANTED.

IT IS SO ORDERED.

_____

DATED:                                                    REGGIE B. WALTON

United States District Judge

To be served: Kelley C. Barnaby, Peter Kazon, and all counsel of record