**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, THE STATE OF CALIFORNIA, THE STATE OF CONNECTICUT, THE STATE OF COLORADO, THE STATE OF DELAWARE, THE STATE OF FLORIDA, THE STATE OF GEORGIA, THE STATE OF HAWAII, THE STATE OF ILLINOIS, THE STATE OF INDIANA, THE STATE OF LOUISIANA, THE STATE OF MARYLAND, THE COMMONWEALTH OF MASSACHUSETTS, THE STATE OF MICHIGAN, THE STATE OF MINNESOTA, THE STATE OF MONTANA, THE STATE OF NEVADA, THE STATE OF NEW JERSEY, THE STATE OF NEW MEXICO, THE STATE OF NEW YORK, THE STATE OF NORTH CAROLINA, THE STATE OF OKLAHOMA, THE STATE OF RHODE ISLAND, THE STATE OF TENNESSEE, THE STATE OF TEXAS, THE COMMONWEALTH OF VIRGINIA, THE STATE OF WASHINGTON, THE STATE OF WISCONSIN and DISTRICT OF COLUMBIA *ex rel*. TINA D. GROAT, M.D., M.B.A., <br><br>    Plaintiffs, <br><br>    v. <br><br> BOSTON HEART DIAGNOSTICS CORPORATION, <br><br>    Defendant. | Case No. 1:15-cv-00487 (RBW) <br> **<u>HEARING REQUESTED</u>** |

**BOSTON HEART DIAGNOSTICS CORPORATION'S
REPLY IN SUPPORT OF ITS MOTION FOR RECONSIDERATION OF THE
<u>COURT'S ORDER ON THE MOTION TO DISMISS</u>**

I.  **THE COURT'S OPINION CREATES AN UNFOUNDED OBLIGATION FOR LABORATORIES TO ESTABLISH MEDICAL NECESSITY.**

In her Opposition, Relator attempts to misdirect the Court as to the holding and language in the Opinion for which Boston Heart seeks reconsideration.  To be clear, the finding that Boston Heart argues is erroneous is that a laboratory is obligated "to establish that the tests for which it seeks government reimbursement are medically necessary . . ."  Memorandum and Opinion at 16; *see also* Motion for Reconsideration at 1 n.1.  In clear contradiction to this holding, the OIG Lab Guidance states that:  "laboratories do not and cannot treat patients or make medical necessity determinations."  63 Fed. Reg. 45,076, 45,079 (Aug. 24, 1998).  Thus, Boston Heart submits that the Court erred in its consideration of this key government directive and that in the interests of justice and the continued proper and efficient operation of laboratories around the country, it should reconsider its holding.  The Court's legal error is due to the Relator's misdirection in her opposition to Boston Heart's motion to dismiss, in which she misled the Court as to the proper reading of controlling regulations and analysis of case law.

Relator continues her effort at misdirection in her Opposition to the Motion for Reconsideration.  In the Opposition's very first sentence, Relator attempts to mislead the Court by stating, "Boston Heart asks the court to reconsider the portion of its opinion in which it held that a laboratory has 'an independent obligation to **certify** that the tests for which it requested government reimbursement were medically necessary.'"  Opp. at 1 (emphasis added) (quoting Opinion at 19).  Boston Heart asks no such thing—that is not the language it is asking the Court to reconsider.  Rather, Boston Heart asks this Court to reconsider its "adoption of Relator's assertion that Boston Heart was obligated to independently determine that the tests for which it sought payment were medically necessary."  Motion for Reconsideration at 1; *see also* Opinion at 16 ("The Court agrees with the relator that Boston Heart has an obligation to establish that the

tests for which it seeks government reimbursement are medically necessary . . .").[1]

Relator's current description of the relevant holding in her Opposition is puzzling to say the least. In her opposition to the American Clinical Laboratory Association's request to file an amicus brief, Relator described the relevant holding of the Opinion to be that "Boston Heart 'has an obligation to establish that tests for which it seeks government reimbursement are medically necessary . . .'" Opp. to Motion for Leave to File Amicus Brief at 2-3. And in her opposition to the motion to dismiss, she repeatedly argued that "Boston Heart has an independent duty to ensure the medical necessity of the tests it performs . . ." Opp. to Motion to Dismiss at 26. Indeed, that argument is the backbone of Relator's case, and without it, her FCA claims fail.

In contrast, in order not to have to defend the Court's holding, Relator now redefines the holding as follows: that "a laboratory has 'an independent obligation **to certify** that the tests for which it requested government reimbursement were medically necessary.'" Opp. at 1 (emphasis added); *see also id*. at 6-9. But this was not the limit of the Court's holding and not the language Boston Heart is challenging. An obligation to establish medical necessity is very different from an obligation to certify. The former does not currently exist, countermands OIG Guidance, and will force laboratories to hire medical staff to review patient records to confirm ordering physicians' informed judgment, resulting in delays and increased costs. In comparison, the latter requires only that laboratories certify, which they can do by properly relying on a physician's judgment as to medical necessity.

So, while Relator had previously described the Opinion's holding as creating "an

---

[1] The heading of this section of the Opinion is "Whether Boston Heart Must **Determine** Medical Necessity." Opinion at 15 (emphasis added). This Motion for Reconsideration is about whether a laboratory must independently determine medical necessity, a conclusion the Court adopted from Relator. The holding is not—as Relator now claims—about laboratories' certification obligations.

obligation to establish that the tests for which it seeks government reimbursement are medically necessary," *see* Amicus Opp. at 2-3, she now limits the holding to an "obligation to certify." This sleight of hand is a disingenuous attempt to redirect the controversy away from the Court's erroneous holding. As Relator's entire Opposition is premised on this misdirection, the Court should disregard her Opposition.

## II.  BOSTON HEART HAS MET THE STANDARD FOR RECONSIDERATION.

An order or decision that is not a final judgment "may be revised at any time before entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); *see also* Rule 60(b). Courts have "broad discretion to hear a motion for reconsideration" and grant relief "as justice requires." *Lovely-Coley v. District of Columbia*, No. 12-1464 (RBW), --- F. Supp. 3d ---, 2017 WL 2533339, at *2 (D.D.C. June 9, 2017) (Walton, J.) (internal quotation marks and citations omitted). "[J]ustice requires reversal of a prior interlocutory order" when, for example, the court made "errors of law or fact that need correction," or "made an error in failing to consider controlling decisions or data," that would result in "harm or injustice." *Id*. at *5 (internal quotation marks and citations omitted). Even if this standard is not squarely met, the court may still "grant a motion for reconsideration if there are other good reasons for doing so." *Cobell v. Norton*, 355 F. Supp. 2d 531, 540 (D.D.C. 2005).

Here, the Court made an error of law in finding that Boston Heart has an independent obligation to establish medical necessity. *See* Opinion at 16. That error was based on the failure to consider controlling OIG Lab Guidance, which provides that laboratories do not make medical necessity determinations, and a misapprehension of the relevant regulations and case law. If the Motion for Reconsideration is denied, the Opinion will harm both Boston Heart and the

3

healthcare industry generally by resulting in delays and increased costs for laboratory services.[2]

### III. OIG GUIDANCE, RELEVANT REGULATIONS, AND CASE LAW DEMONSTRATE THAT PHYSICIANS, NOT LABORATORIES, ESTABLISH MEDICAL NECESSITY.

Relator claims that the "OIG Lab Guidance firmly establishes a lab's duty to only submit claims for medically necessary tests . . . ." Opp. at 6. She then lists six quotations from the Guidance, *id*. at 6, but none suggest that a laboratory must establish medical necessity and none contradict the fact that physicians, not labs, determine medical necessity. OIG guidance documents make clear that laboratories can rely on that physician determination when signing CMS Form 1500. *See* Motion for Reconsideration at 4.

In addition, the regulations simply demonstrate what the OIG Lab Guidance plainly states: laboratories do not make medical necessity determinations. The regulations allow non-physician billing entities, like Boston Heart, to obtain medical necessity documentation from physicians. The regulations do not expect these entities to create the documentation that establishes medical necessity. *See* 42 C.F.R. § 410.32(d)(2).

Case law cited by Relator also does not support her position.[3] She quoted *Garcia v.*

---

[2] Beyond a Law360 article featuring Relator's counsel in which she highlights the importance of the Opinion imposing an obligation on a laboratory to determine medical necessity, *see* Motion for Reconsideration at 2 n.3, this case has attracted the attention of the legal and healthcare industries. The Opinion has been described as "legally erroneous" and espousing a standard that is "unworkable in the real world." Stephen G. Sozio, et al., *Court Overreaches in Requiring Medical Necessity Determination by Labs*, Jones Day (June 30, 2017), http://www.jonesday.com/court-overreaches-in-requiring-medical-necessity-determination-by-labs-06-30-2017/. This article explains the real-world impact of the Opinion on laboratories. The Court's Opinion would require laboratories "to obtain complete patient medical records and independently verify medical necessity." *Id*. This "will result in delay, or even denial, of needed medical treatment to patients. Such a regime would dramatically increase the cost of testing, and thus the costs incurred by the federal health care programs." *Id*.

[3] Relator argues that Boston Heart distinguished only two of the six cases cited in the Opinion, which is purportedly "an acknowledgement that the [other four] cases stand for the propositions for which the Court cited them." Opp. at 9. In fact, focusing on two cases was an "acknowledgement" only of the Court's page limit, which required some judgment as to which cases to analyze in detail. Regardless, Boston Heart did not ignore the other cases cited in the Opinion. After providing detailed explanations for why neither of two of the cited cases requires a laboratory to independently establish medical necessity, the Motion for Reconsideration stated that "none of the remaining cases the Opinion cites on pages 17 and 18 supports" that proposition. Motion at 9.

4

*Sebelius* but misleadingly omitted text from the footnote immediately following the quoted language, which states that if a billing entity does not have medical necessity documentation, the government requests that information *from the physician*. No. CV 10-8820 PA (RZx), 2011 WL 5434426, at *7 n.6 (C.D. Cal. Nov. 8, 2011). The *Garcia* court did not consider whether a laboratory must establish medical necessity, and the decision actually implies that a laboratory need not. Similarly, *Nephropathology Assocs., PLC v. Sebelius* is not about whether a laboratory must establish medical necessity. It is about the documentation a billing entity must submit when challenging a Medicare coverage denial. No. 4:12CV00233 JLH, 2013 WL 3285685, at *3-4 (E.D. Ark. June 27, 2013).

## IV. THE COURT SHOULD RECONSIDER ITS OPINION AND GRANT BOSTON HEART'S MOTION TO DISMISS.

The Court's holding that Boston Heart must independently establish the medical necessity of the tests it performs is not supported by the OIG guidance, regulations, or case law. Without the requirement that Boston Heart must determine medical necessity, there is nothing in the Second Amended Complaint that describes the circumstances of the alleged fraud other than vague allegations about marketing materials and the requisition form. Relator has not alleged facts, however, demonstrating that those documents were in any way false.

Relator also has not sufficiently alleged knowledge. The OIG Lab Guidance is clear that laboratories cannot make medical necessity determinations. This is a government-promulgated document that guides laboratories in developing compliance programs. Because the government itself has said that laboratories do not and should not determine medical necessity, Boston Heart could not have formed the intent to knowingly violate the FCA when it relied on treating physician determinations as to medical necessity. The Court should reconsider its Opinion on Boston Heart's Motion to Dismiss and grant that motion in its entirety.

Dated: July 27, 2017

Respectfully submitted,

BOSTON HEART DIAGNOSTICS
CORPORATION

By its attorneys

/s/ Jonathan L. Kotlier
Hope S. Foster (D.C. Bar No. 182998)
Karen S. Lovitch (D.C. Bar No. 452966)
Laurence J. Freedman (D.C. Bar No. 423099)
MINTZ LEVIN COHN FERRIS GLOVSKY
  AND POPEO, P.C.
701 Pennsylvania Ave. N.W., Suite 900
Washington, DC 20004
Telephone: (202) 434-7300
Facsimile: (202) 434-7400
HSFoster@mintz.com
KSLovitch@mintz.com
LJFreedman@mintz.com

Michael S. Gardener (*admitted pro hac vice*)
Samantha P. Kingsbury (*admitted pro hac vice*)
MINTZ LEVIN COHN FERRIS GLOVSKY
  AND POPEO, P.C.
One Financial Center
Boston, MA 02111
Telephone: (617) 542-6000
Facsimile: (617) 542-2241
MSGardener@mintz.com
SPKingsbury@mintz.com

Jonathan L. Kotlier
  (*admitted pro hac vice*)
Christopher H. Lindstrom
  (*admitted pro hac vice*)
Alison Holdway
  (*pro hac vice admission pending*)
NUTTER, MCCLENNEN & FISH, LLP
Seaport West, 155 Seaport Blvd.
Boston, Massachusetts 02210
Telephone:   (617) 439-2000
Facsimile:   (617) 310-9000
jkotlier@nutter.com
clindstrom@nutter.com
aholdway@nutter.com

**CERTIFICATE OF SERVICE**

I certify that, on July 27, 2017, this document (filed through the ECF system) will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

                                              /s/ Jonathan L. Kotlier
                                              Jonathan L. Kotlier

3629989.9