# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., Ex rel. TINA D. GROAT, <br><br>Plaintiffs, <br><br>v. <br><br>BOSTON HEART DIAGNOSTICS CORPORATION, <br><br>Defendant. | Civil Action No. 15-487 (RBW) |

# REPLY
# TO RELATOR'S RESPONSE TO BRIEF OF AMICUS CURIAE
# AMERICAN CLINICAL LABORATORY ASSOCIATION

# TABLE OF CONTENTS

**DISCUSSION** .................................................................................................................... 1

**I.**     ACLA addressed the threshold legal question concerning laboratories
         obligation for determining medical necessity. ...................................................... 1

**II.**    Relator consistently mischaracterizes the effect and purpose of 42 C.F.R. § 410.32(a). .............. 3

**III.**   Relator consistently makes assertions without any basis............................................................ 3

# TABLE OF AUTHORITIES

**Other Authorities:**

Compliance Program Guidance for Clinical Laboratories, 63 Fed. Reg. 45076, 45079
(Aug. 24, 1998)……………………………………………………………………….…1, 2

CMS, Medicare Program Integrity Manual, Chap. 1, §1.3.1…………………………..…………3 fn.2

Medicare Program; Negotiated Rulemaking: Coverage and Administrative Policies for Clinical
Diagnostic Laboratory Services; Final Rule, 66 Fed. 58788, 58800 (Nov. 23, 2001)……………...3 fn. 3

**Statutes:**

Mass Code Regs., titles 231-271……………………………………………….………………..…5

105 Mass. Code. Regs. § 180.001……………………………………..…………………………..5

Pursuant to the Court's Order of September 8, 2017, Amicus Curiae, the American Clinical Laboratory Association ("ACLA"), respectfully submits this Reply Brief in order to correct several errors and mischaracterizations made by the Relator in her Response to ACLA's Amicus Brief. ACLA is a not-for-profit organization that represents the interests of clinical laboratories and advocates for laws and regulations that support the essential role of laboratories in delivering quality health care. As stated in ACLA's Amicus Brief, ACLA members respectfully submit that the Court's ruling, which held that laboratories have an independent obligation to ensure the medical necessity of tests for which they bill, will have significant deleterious effects not just on laboratories, but also on the physicians and patients who rely on these vital services.

## DISCUSSION

### I. ACLA addressed the threshold legal question concerning laboratories' obligation for determining medical necessity.

Relator argues that ACLA did not address the threshold legal question of whether or not laboratories have an obligation to determine that tests billed are medically necessary. Relator's Response to Brief of Amicus Curiae American Clinical Laboratory Association ("RR") at 2. Relator argues that ACLA only discussed how that obligation is to be met, not whether the obligation exists in the first instance. *Id.*

This is a misstatement of ACLA's position. In its brief, ACLA discussed at length the nature of the laboratory's obligation that exists under Medicare requirements. Brief of Amicus Curiae American Clinical Laboratory Association ("AB") at 6 *et seq*. As explained there, any analysis of this issue must begin with the basic fact—recognized in the OIG's Compliance Program Guidance for Clinical Laboratories ("Laboratory Compliance Plan") and noted throughout ACLA's Amicus Brief—that "laboratories do not and cannot …make medical necessity determinations." AB at 6-7 (citing Laboratory

Compliance Plan at 63 Fed. Reg. at 45079.) Consistently throughout the Laboratory Compliance Plan, the OIG refers to the physician making the determination of medical necessity, not the laboratory. In fact, the laboratory's obligation, according to the OIG, is to inform the physician that they should only order tests they believe are medically necessary and that Medicare will pay only for medically necessary tests.[1] As a result, laboratories routinely inform physicians that they should only order medically necessary tests and some, like Boston Heart, require the physician to certify to the fact that the tests ordered meet this standard.

Thus, the certification language of the Form CMS-1500 must be read in conjunction with the OIG's recognition that laboratories do not determine medical necessity, physicians do. According to the OIG, laboratories are to remind physicians that when they order tests for which laboratories are to bill, those tests must be ones that the physician—not the laboratory—believes are medically necessary for the diagnosis and treatment of his or her patients. In sum, the OIG recognizes that when billing for laboratory testing on a Form CMS-1500, the laboratory will rely on the physician's determination of medical necessity.

This does not mean that providers can bill Medicare for medically unnecessary services and falsely certify to the medical necessity of such services, as Relator argues. (RR at 9.) If a laboratory had actual knowledge that the services were not medically necessary, then it could not certify and could not bill for those services. However, ACLA's point is that in virtually every case, the laboratory cannot judge, and does not know, whether or not the services are medically necessary. Only the physician is licensed to make that determination and only the physician has knowledge of the patient's medical record.[2] A

---

[1] *Id.* ("Laboratories can and should advise physicians that when they instruct the laboratory to seek Medicare reimbursement for tests ordered, they should only order those tests that they believe are medically necessary for the diagnosis and treatment of their patients.")

[2] Of course, Medicare contractors do frequently request additional information to determine whether or not the services billed for are medically necessary. Medicare has established numerous different types of

2

requirement that laboratories must make an independent assessment of the medical necessity of testing, without being able to rely on the physician's determination, will disrupt the entire testing process to the detriment of physicians and their patients.  AB at 9.

    **II.**    **Relator consistently mischaracterizes the effect and purpose of 42 C.F.R. § 410.32(a).**

Relator also cites 42 C.F.R. §410.32(d)(2)(iii), which states that the laboratory *may* request additional information in connection with a claim, as proof that the laboratory is responsible for medical necessity.  RR at 3, 5.  However, the provision will not support this interpretation.  This regulation merely states that it is *permissible* for the laboratory to request additional information, not that such action is *required*.  At the time this provision was added, CMS explained that laboratories simply were not "precluded" from seeking additional information.[3]  If CMS intended that laboratories were *required* to seek information, or that the laboratories had the responsibility for determining medical necessity, it would have said so in far more direct language.  Further, the fact that the information requested must relate to the medical necessity of the tests, language also cited by Relator, simply ensures that the information requested is limited in scope.  In sum, the provision does not support in any way the assertion that the laboratory *must* seek such information because somehow it is responsible for the determination of medical necessity.

    **III.**    **Relator consistently makes assertions without any basis.**

On numerous occasions, Relator makes assertions that are totally unfounded and without any basis in fact or law.  For example, Relator rejected ACLA's concern that laboratories could be found liable if they failed to perform the requested testing and the patient was subsequently injured.  She asserted that

---

contractors whose purpose is to review claims and determine whether the billing was appropriate.  *See* CMS, Medicare Program Integrity Manual, Chap. 1, §1.3.1

[3] *See* Medicare Program; Negotiated Rulemaking: Coverage and Administrative Policies for Clinical Diagnostic Laboratory Services; Final Rule, 66 *Fed. Reg.* 58788, 58800 (Nov. 23, 2001).

"ACLA's argument rings hollow in light of the fact that labs presumably decline to perform tests every day under circumstances where a physician orders a test for a patient and a lab determines that, for whatever reason, the patient's healthcare insurance carrier would not cover the test." RR at 8.

Relator cites no basis for its "presumption," nor is it correct. No laboratory would remain in business if it declined to perform tests every day. Furthermore, laboratories take seriously their obligation to perform the tests that have been ordered, as they recognize that physicians and their patients are relying on the results. In fact, laboratories frequently perform tests that the insurance company (or Medicare) is unlikely to cover. In limited circumstances, a laboratory may inform the physician that a payor requires additional information; however, when doing so the laboratory relies on a payor's specific coverage policy—rather than its own subjective judgment as required by Relator—and the notice is given before the test is ordered—rather than, as the Relator would require, after the specimen is received by the laboratory, when the physician and patient are awaiting the results.

Relator also argues that it is unnecessary for the laboratory to have any knowledge of the patient's medical record because the laboratory can easily determine medical necessity based on a "decision tree" created by the Relator. She explains, "For non-controversial tests that are generally considered appropriate," laboratories would rely on the documentation provided by the physician. For other tests that are "known to be only medically necessary in connection with certain diagnosis codes," the laboratory would review the diagnosis codes provided and compare them to the tests ordered. If the codes "do not correlate with the ordered tests," the laboratory would request additional information. RR at 4.

Relator does not provide any basis for its assertion that such easily definable categories of tests exist, nor could she. There is no basis for determining which tests are "non-controversial;" which are "known to be medically necessary in connection with certain diagnosis codes;" or which "correlate" with specific diagnosis codes. Even if a laboratory were to obtain additional diagnosis codes, as Relator

4

proposes, the laboratory still would have no basis for determining whether that additional information "correlates" with the ordered tests.[4]

Finally, Relator argues that ACLA has selectively quoted from Massachusetts law regarding the fact that laboratories are not permitted to practice medicine. RR at 7. Relator cites a provision that excludes from the definition of practice of medicine "conduct lawfully engaged in by persons *licensed by other boards of registration* with the authority to regulate such conduct." RR at 7 (Emphasis added.) However, this provision is inapplicable to laboratories. Various types of healthcare and other professionals are subject to the jurisdiction of boards of registration. Mass. Code Regs., Titles 231 - 271. However, laboratories are licensed by the Massachusetts Department of Health under a completely different set of provisions and are not licensed by another "board of registration". *See* 105 Mass. Code Regs. §180.001. Therefore, this provision is inapplicable to laboratories.

In conclusion, for all the reasons cited herein and in ACLA's Amicus Brief, ACLA asks the Court to revise its Memorandum Opinion to recognize that laboratories are not required to make a determination concerning the medical necessity of a test prior to performing and billing for it.

Respectfully submitted,

*/s/ Kelley C. Barnaby*
Peter M. Kazon, Esq. (D.C. Bar No. 271817)
peter.kazon@alston.com
Kelley C. Barnaby, Esq. (D.C. Bar N. 998757)
kelley.barnaby@alston.com
Alston and Bird, LLP
950 F Street, NW
Washington, DC 20004
(202) 756-3300
(202) 654-4834(f)

*Counsel for non-party American Clinical Laboratory Association*

---

[4] Furthermore, this does not take into account the point, made in ACLA's Brief, that it will be virtually impossible to perform this review on the 1.3 million laboratory tests that are performed, on average, every day by clinical laboratories. AB at 8.

5

**CERTIFICATE OF SERVICE**

I certify that on September 15, 2017, this document, filed through the Court's ECF System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

*/s/ Kelley C. Barnaby, Esq.*
Kelley C. Barnaby